**J. C. STEWART, G. C. Martin, M. B. Sharron and G. C. Ralls, Appellants,**

v.

**DAY & ZIMMERMANN, INC., et al., Appellees.**

**No. 18749.**

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1961.

John D. Raffaelli, Texarkana, Tex., John D. Raffaelli, of Raffaelli & Keeney, Texarkana, Tex., for appellants.

Norman C. Russell, Atchley, Russell & Hutchinson, Texarkana, Tex., LeRoy Autrey, Texarkana, Ark., for appellee Day & Zimmermann, Inc.

L. N. D. Wells, Jr., George Schatzki, Dallas, Tex., Jim Lindsey, Texarkana, Tex., Mullinax, Wells, Morris & Mauzy, Dallas, Tex., of counsel, for appellee Local 50, International Guards Union of America.

Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

Appellants were four guards employed by appellee Day & Zimmermann, Inc., operators of the Lone Star Ordnance Depot, near Texarkana, Texas. They were members of Local 50, International Guards' Union of America. When they were laid off from work by the employer and after efforts to have the grievance arbitrated by the Union with the employer had proved abortive they filed this action for damages against the employer and the Union [1] and for reinstatement to their positions with back pay. They claimed that they had been laid off out of line of seniority, contrary to the provisions of the applicable collective bargaining contract, between the employer and the Union, and as the result of a conspiracy between the employer and the Union to breach the collective agreement.

The portions of the collective bargaining agreement governing this controversy are these:

"Section 8.1. Seniority Rating. The seniority of each guard is his relative position with respect to other guards based on the length of his service as a guard in the Safety and Security Division.

"Section 8.2. Promotions to Supervisory Position. Employees promoted to supervisory positions within the Guard Department shall continue to accrue seniority * * *.

"Section 8.3. Layoffs. In the event of a reduction in force, guards with the greatest seniority in the Guard Department shall be retained; * * * *"

The appellants were employed subsequent to Guards Lann, Gunter, W. L. Martin and Pickens. In 1953, when the Union was certified as collective bargaining agents for the guards, Lann et al had been promoted to supervisory positions, and thus were not at that time within the bargaining unit. The appellants were then members of the unit.

Guard Officers Lann et al were demoted into non-supervisory guard positions and this displaced non-supervisors having less seniority. In 1959, under a reduction in forces, the four appellants were laid off. Appellants complained that the retention of Lann et al was

1. Initially both the International Union and the Local were sued, but the action against International was abandoned.

wrongful and asserted that those four should have been laid off and the appellants retained.

The trial court, sitting without a jury, heard the testimony of ten witnesses and entered its findings, in minute detail, of the facts upon which its conclusions infra were based.[2]

Based upon these findings the trial court concluded that appellants were laid off pursuant to a good faith interpretation given the contract by the Company and the Union, and that the layoff was consistent with the accepted practices of the past; that the bargaining agreement had been correctly interpreted by the parties, that the Union was under no obligation of law to submit the grievances to arbitration, and that the Company and Union had not acted in collusion; that the employment of appellants had been terminated in accordance with the contract, and that the appellants were estopped to challenge the correctness of

the seniority accorded to Lann et al. We are of the opinion that the findings of fact by the court were supported by the evidence before it, and that its conclusions of law were justified.

■ The basic problem facing the court below was the determination of the meaning of the contract provisions quoted supra. Appellants analyze these sections of the contract in the light of the provisions of the contract as a whole in an effort to show that the phrase "Employees promoted to supervisory positions within the Guard Department" did not include within its terms the four employees who had been so promoted prior to the time the initial contract was executed. No authority is cited as furnishing a precedent for what seems to us a strained construction. Appellee the employer cites many cases as furnishing support for its argument that the four guards were in their seniority rights by the quoted sections of the contract. But

2. The court found *inter alia*:

That appellants were hired subsequent to Guards Lann, Gunter, Martin and Pickens whose elevation to supervisory capacity, and subsequent reduction to guard status furnishes the basis of appellants' case;

That the Union was certified as bargaining agent March 18, 1953, after the appellants and the other guards mentioned had been employed, and after Lann et al had been promoted to supervisory positions; that renewal contracts between the employer and the Union were entered into July 23, 1953, March 18, 1954, March 18, 1955, May 15, 1956 and May 15, 1958;

That the contracts provided that those guards serving as general officers upon the date of certification would continue to accrue seniority under the contract from their original date of hire and that consistently since the original contract, both the employer and the Union had interpreted the contract "so as to permit continuance of accrual of seniority by guard officers during the tenure of their service as officers;"

That all guards serving as officers had continued to accrue seniority and their seniority had been shown on the posted seniority lists; that during intermittent cutbacks in the size of the work force, guard officers Lann et al had been "bumped back" into non-supervisory

guard positions and had always been carried on seniority lists, their authority dating from the original hire; that appellants had knowledge of these procedures through the quarterly posting of seniority lists, as required by the contracts, and that they were informed of what had transpired;

That in February, 1959, the employer gave notice to appellants of the termination of their service because of cutback in employed force, and they filed a grievance with the employer protesting their termination upon the claim that such action violated their seniority rights based upon their contention that they had more seniority than Lann et al; that appellants, as individuals, demanded arbitration of their grievances, but the demand was rejected by the employer, because the contract did not afford individual employees the right to arbitrate; that in March, 1959, the Union requested arbitration, but the employer denied the request, because it was not filed within the time provided by the contract; that this request for arbitration was made by the Union, although it did not agree with the substance of the grievances; and that the Union had initially declined to seek arbitration, both because it believed the grievances lacked merit and because of the expense involved in arbitration.

none of the cases is close enough in point to warrant discussion. The court below accepted the argument of the employer and the Union as to the meaning of the sections [3] and we agree with its conclusion.

Appellants take the position that it was improper for the court below to consider testimony of prior or contemporaneous construction by the parties of the questioned provisions of the contract. They cite a number of Texas cases supporting the rule that, if the words of a contract are clear and free from ambiguity, parol evidence is inadmissible to vary, alter, amend or add to the terms of the writing.[4] Nobody questions that principle of law, but we are dealing here with a trial before the court without a jury and with a sharply contested issue as to whether the seniority which should accrue to employees promoted to supervisory position should have application only to those promotions which should be made after the contract had been entered into. The court found that the contract, interpreted by its four corners, carried the meaning that the questioned language applied to all employees whether their promotion took place before or after the signing of the first contract.

It added as a separate finding the conclusion, inescapable from the evidence, that the parties had uniformly construed the contract as having the meaning the court below gave it, had discussed changing the language so as to make it conform to the appellants' present contentions, and that the appellants themselves were well aware of the interpretation given the language by the parties and of the discussions about a possible change in the language. No harm accrued to the appellants by the fact that the court heard this testimony, because the decision was already against them, and properly we think, on the meaning of the contract without the evidence of construction by the parties.[5]

3. The trial judge stated spontaneously after hearing the oral arguments:

"Now I find it hard to believe that anyone could take the position that a particular class, in this instance the guards, would be discriminated against if they received promotion in their class. And therefore, you could not count the period which they are promoted to supervisor in their seniority. I can't conceive for the life of me, any fair reasoning, how anybody can take that position that you would be discriminated against, if you received promotion in your particular class. And the Court will have to conclude that a supervisor is a promotion from a guard."

Referring to his estimate of the contention of appellants that the Company should have given seniority to appellants while disregarding the rights of others who were previously employed, the trial judge stated:

"Now to the Court's way of thinking that would be the most unfair position that a company could possibly take. And to follow that line of reasoning, the plaintiffs themselves who are members of the contracting group of 1953, say yes, we favor seniority for those in our group who go up to supervisors. We favor that for ourselves, but we don't favor it for anybody else. Now, does that smack of fairness? Does that smack of good reasoning? Does that smack of logic? It's all right, we will claim seniority for ourselves, but no seniority for anyone else, because they are not part of the contracting group. Notwithstanding the fact, that they are the same class of people. They are guards and supervisors. That's what you are dealing with, guards and supervisors * * *."

4. E. g., Bauer v. Taylor, Tex.Civ.App. Eastland, 118 S.W.2d 826, writ refused; and Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217.

5. The Union points out that, in the handling of collective bargaining contracts, the practice of the parties has been uniformly accorded great significance. It quotes from Werne, Law and Practice of the Labor Contract, Callaghan & Co., 1957, Vol. 1, at page 195:

"Where past practice has established a meaning for language that is subsequently used by the parties in a new agreement, it is a well settled principle of arbitration that the language will be presumed to have the meaning given it by such practice."

And the Union cites further Vol. 6, Labor Law Reporter, § 51, 732; International Shoe Co., 31 Labor Arbitration Reports 739; Hoke, Inc., 3 Labor Arbi-

Appellants argue earnestly that they were entitled to have their grievances submitted to arbitration by the Union. They present many details of their controversy with the Union, and would have us hold that they were the victims of extremely unfair treatment arising from their contention that the Union officials and representatives were acting in collusion with the employer. There is no doubt that there was difference of opinion among the union members as to whether the Union should sponsor and press the appellants' claims through the arbitration and other procedures provided in the contracts.

But the trial court heard the testimony and concluded that there was no collusion between the Union representatives and the employer, and that appellants had failed to show any evidence of conspiracy or fraud between them. We agree with the conclusions of the trial judge and feel, as we are sure he did, that union officials should be given a wide latitude in deciding intra-union disputes and that courts should be slow to intervene in them, but should, on the other hand, invest their decisions and actions with a presumption of honesty and fairness.

We agree with the sentiments expressed by the Supreme Court in Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048, which the Union quotes in its brief:

"* * * The bargaining representative * * * is responsible to,

and owes complete loyalty to, the interests of all whom it represents. * * * Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." [6]

A number of the points raised by appellants were dealt with by the Court of Appeals for the Fourth Circuit in the recent case of Henderson et al. v. Eastern Gas and Fuel Associates, 1961, 290 F.2d 677. We have considered all of the specifications of error relied upon by the appellants, and we think they are without merit. We think that this record reveals that the employer and the Union acted with restraint and maturity in the handling of the claims of these appellants, and that they were accorded all of the rights to which, under the contract and the law, they were entitled.

The judgment of the lower court was, in our opinion, right and it is

Affirmed.

tration Reports 748; Diamond Alkali, 2 Labor Arbitration Reports 720; and Columbia Steel Co., 5 Labor Arbitration Reports 638, as sustaining the right of the court to consider the course of dealing between the parties in interpreting the clauses in a labor agreement.

6. We approve also language quoted in the Union's brief from the case of Ostrofsky v. United Steelworkers, D.C., 171 F.Supp. 782, 791, 793, affirmed by the Court of Appeals, Fourth Circuit, 273 F.2d 614:
"The philosophy of the Union in retaining control over disputes and of the Company in requiring the same is sound. A

contrary procedure which would allow each individual employee to overrule and supersede the governing body of the Union would create a condition of disorder and instability which would be disastrous to labor as well as to industry. * * *
"* * * The principal purpose of the grievance procedure is not to provide a framework within which individual desires and complaints can be taken up with the employer; rather, it is to provide a framework within which the employees may *bargain collectively* to determine how the general principles of the agreement are to be applied to day-to-day problems."