Glynn E. HENSLEY, Plaintiff,

v.

UNITED TRANSPORTS, INC., et al.,
Defendants.

No. CA–5–932.

United States District Court,
N. D. Texas,
Lubbock Division.

Aug. 21, 1972.

John Edward Price, Center, Colo., for plaintiff.

Buddy Wright, Law Offices of Tom Upchurch, Jr., Fort Worth, Tex., Robert L. Templeton, Amarillo, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case was called for trial on the 10th day of August, 1972, in Lubbock, Texas, and there appeared in open court each of the parties and their attorneys and all parties announced ready for trial, with the exception of the defendant Union, Local No. 577, which reserved the right to request continuance of the trial for the purpose of presenting this defendant's case at a later date. The case was tried before the Court without a jury.

After hearing and examining the evidence presented to the Court and the argument of counsel, the Court files herewith its findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Plaintiff, Glynn E. Hensley, was employed as a truck driver by the defendant, United Transports, Inc. (hereinafter "United"), in their St. Louis terminal until about November 1960, when he was laid off because of a closing of this terminal. The plaintiff had been first employed by United in November 1956.

2. In November 1964, the plaintiff went back to work for United at its terminal at Floydada, Texas, and has been employed as a truck driver working out of this terminal on a substantially regular basis since that date.

3. Between November 1960 and November 1964, the plaintiff worked for United as well as Texas Automobile Transports and Auto Transports, Inc., these three corporations being principally owned by a Mr. Wood.

4. During the interim period between his St. Louis and Floydada employments the plaintiff worked for United on several occasions as a truck driver working out of their terminals in Irving, Texas; Tulsa, Oklahoma; and Houston, Texas. He was employed by and paid by United for these periods of time and there was no lapse of time for as much

as two years when he did not so work for United in the period between November 1960 and November 1964.

5. There was no agreement between United and the defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 577 (hereinafter "Union"), wherein it was agreed that the plaintiff would be a seasonal, casual or part-time employee at any time.

6. There has been introduced into evidence, Plaintiff's Ex. No. 1, the National Master Automobile Transporters' Agreement effective as of March 1, 1964, and which had been executed by United and the Union. The evidence does not show the existence of any contract prior to March 1, 1964.

7. The contract provides, Article 29, Section 1, in part as follows:

Seniority shall be broken only by discharge, voluntary quit, or more than a two (2) year layoff . . ..

8. After the plaintiff went to work for United in Floydada, Texas, in November 1964, a seniority list was posted at that terminal giving the seniority date of the plaintiff as January 15, 1965, for both his company seniority and his terminal seniority. It was on January 15, 1965, that the plaintiff had executed an application for work, which application has been introduced into evidence.

9. Plaintiff immediately contacted the Union representative at the Floydada terminal, pointing out that his seniority should be dated in November 1956 when he first went to work for United, since there had not been a period of more than two years wherein he had not worked for this company and since therefore Article 29, Section 1, of the bargaining agreement provided that his seniority should not be broken.

10. Plaintiff was told not to be concerned about the question of seniority, but in June 1965 the plaintiff and his wife went to Oklahoma, visited in the home offices of United, and talked to the director of personnel, Mr. Harold Heitman. Plaintiff states that on this occasion Mr. Heitman advised him that he should file a grievance, as the proper way to handle this matter, and that such grievance would not be opposed by Mr. Heitman or by United.

11. Plaintiff filed such a grievance through the proper procedures pursuant to the contract between the Union and the employer. (Plaintiff's Ex. No. 1). This grievance was processed through and with the help of the Union's representative at the Floydada terminal.

12. The history of this grievance is outlined in Defendants' Ex. No. 1 which briefly shows as follows:

(a) November 4, 1965. Grievance heard by the Southwest Area Grievance Committee, with the decision that the claim of the Union was denied. This means that plaintiff's claim for change in his seniority date was denied.

(b) January 14, 1966. Case heard by the Southwest Area Grievance Committee which determined that the case was improperly before it at that time.

(c) July 15, 1966. Request for a new hearing before the Southwest Area Grievance Committee with a decision that "based on new evidence presented the case is deadlocked."

(d) October 26–27, 1966. Case heard by the Detroit Joint Arbitration Committee; by unanimous vote the committee denied the claim of the Union and the plaintiff.

(e) April 26–27, 1967. Case was filed for rehearing before the Detroit committee; the request for rehearing was unanimously declined.

(f) August 6–7, 1969. Request for rehearing by the Southwest Area Grievance Committee, which decided that the case was improperly before this committee because the Detroit committee had assumed jurisdiction of the case.

(g) November 4–5, 1969. The Detroit committee by a majority vote granted the rehearing.

(h) February 25–26, 1970. The request for rehearing of plaintiff for change in his seniority position was denied by a majority vote because of insufficient new evidence.

13. Several of the above-named committees contained, as members, friends and acquaintances of plaintiff, which friends and acquaintances harbored no ill will or bad feeling toward plaintiff.

14. In the Fall of 1968 a representative of the defendant local Union went with the plaintiff to the law offices of Tom Upchurch. There were several visits between the plaintiff and attorney Upchurch and his associate, Buddie Wright, concerning this matter. Plaintiff states that he was led to believe that Upchurch would represent him but that he was informed by Mr. Upchurch that he could not represent him in this private matter on the basis of the fees paid him by the Union and that the plaintiff would have to pay him $500 for his services. No portion of the $500 has ever been paid. Mr. Upchurch suggested that the plaintiff talk with the National Labor Relations Board.

15. In March 1969 the plaintiff, determining that his visits to Mr. Upchurch were futile, demanded back his file, which accordingly was returned to him.

16. There is no provision in the Union contract with the employer, Plaintiff's Ex. No. 1, that makes it a duty of the Union to furnish plaintiff with an attorney in an instance such as the present one.

17. No lawyer-client relationship was ever established between the plaintiff and either Tom Upchurch or Buddie Wright.

18. The plaintiff knew, or should have known, in March 1969 that Tom Upchurch and Buddie Wright were not going to represent him in this matter, and knew or should have known at this time of all facts and circumstances relating to the conduct of Tom Upchurch and Buddie Wright in connection with the matters under consideration in this case.

19. The instant case was filed in this Court on August 10, 1971, wherein the plaintiff sues the defendant local Union, the defendant employer (United), and the two above-named attorneys. The Court has granted plaintiff's motion that the defendant Buddie Wright be dismissed from the case.

20. In his complaint, the plaintiff charges as follows:

(a) That the defendant Union has not represented the plaintiff in a fair manner in the presentation of his grievance under the terms of this contract as required by the National Labor Relations Act and the terms of the contract between the Union and United.

(b) That the defendant attorneys have aided and abetted, conspired and schemed with the defendant Union and the defendant employer to deprive plaintiff of his rights under the contract and of his right to a fair representation as required.

(c) That the defendant employer has breached its contract in that it has failed to grant to plaintiff his seniority rights and the fringe benefits that would come therefrom as well as his right to obtain employment over those who would have subordinate seniority rights.

(d) That the defendants connived and conspired to deprive plaintiff of his rights under the contract and to deny him fair representation in the grievance procedures established under the contract.

(e) That plaintiff is entitled to money damages and equitable relief restoring his seniority rights, and a declaration that the grievance procedures in the contract are unfair and unjust.

21. The plaintiff has failed to produce in evidence any testimony, exhibits, or evidence of any nature that would provide the Court with basis in fact to determine any money damages suffered by him, and the record is entirely void of any criteria that the Court could use in establishing such money damages.

22. As found above, the plaintiff was afforded hearings before various grievance committees established by the contract on at least eight different occasions. These hearings were arranged by the defendant local Union and its representatives who appeared at such hearings.

23. The plaintiff was present at all except the first grievance hearing, at which the director of personnel (Harold Heitman) was present on behalf of defendant employer and apparently presented evidence against the plaintiff's claim.

24. The plaintiff was never denied the right to present any evidence or denied the right to say anything he desired at any of such hearings, and he was accompanied at said hearings by his Union representative. At such hearings he was permitted to produce evidence in the form of check stubs and payroll records, showing his employment during the period of November 1960 and November 1964 by United to support his claim that he was not laid off for a period of more than two years. Notwithstanding the evidence so presented his claim was denied, apparently on the basis of other evidence presented by the defendant employer.

25. The panels hearing the grievance of the plaintiff at the hearings were neither antagonistic nor hostile to the plaintiff for his claim and acted in a fair and impartial manner.

26. The plaintiff claims, and the record in this case shows, that the defendant Union did not independently offer to the grievance panels any evidence other than that furnished by the plaintiff. There were apparently no arguments, written briefs, or other memoranda filed with the grievance committees other than the evidence referred to above.

27. The defendant Union was impartial in its handling of the grievance of plaintiff to the grievance committees. Its action was in good faith and was not discriminatory, arbitrary, or perfunctory, as shown by its arranging for the hearings, accompanying the plaintiff to same, and seeing that the evidence that he had was presented to the respective committees; and the Union performed every act and fulfilled every obligation imposed upon it by the contract or by law.

28. Plaintiff's Ex. No. 1, the contract between the defendant Union and the employer, provides that a decision of majority of the panel of any of the committees shall be final and binding on all parties, including the employee affected. Art. 7 § 5. Since the local area committee was deadlocked in its decision of July 15, 1966, the case was properly heard by the Detroit Joint Arbitration Committee which handed down its final decision on April 26–27, 1967, denying relief to the plaintiff.

29. More than two years elapsed between the final hearing of the Detroit Committee in April 1967 and the next time any committee was assembled to hear a request for rehearing (the Southwest Area Grievance Committee), on August 6–7, 1969.

30. The defendant employer, United, did abide by the decision of the grievance committee as it was required to do under the terms of the agreement, in denying seniority to plaintiff.

31. The request for rehearing before the Detroit committee, granted in November 1969, and the actions of that committee thereon in November 1969 and February 1970, did not alter the original decision in April 1967 denying plaintiff any relief.

32. After the decision of the Detroit committee on April 26–27, 1967, the plaintiff in this case, Glynn E. Hensley, knew or should have known all of the

facts in this case that would put him on notice and knowledge of any conduct by the defendant Union, the defendant attorneys, and the defendant employer which could constitute any collusion, connivance, or other tortious contract, and such knowledge or constructive knowledge gave notice of any facts that would constitute a cause of action against the defendants in this suit.

33. There has been no evidence presented on the basis of which the Court could reasonably find the existence of any connivance, collusion, or conspiracy between, among, or on the part of any of the defendants herein, to deprive plaintiff of his rights under the contract in question or of any other rights. Further, the Court finds that no such connivance, collusion, or conspiracy existed.

34. More than four years elapsed between the date of the decision of the Detroit committee on April 26–27, 1967, and the filing of this suit in August 1971.

35. The defendants in this suit did not violate the terms of the contract known as Plaintiff's Ex. No. 1.

36. The plaintiff knew or should have known no later than April 26–27, 1967, that Mr. Harold Heitman's representation that United would not oppose his grievance claim would not be honored. Plaintiff knew or should have known this because he had been present at at least four grievance meetings prior to that date at which Mr. Heitman appeared and opposed his claim.

### CONCLUSIONS OF LAW

■ 1. This Court has jurisdiction of this cause of action under the provisions of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, as this is a cause of action asserted against defendant Union and defendant employer for breach of the contract introduced as Plaintiff's Ex. No. 1. United States district courts "have jurisdiction over suits to enforce collective bargaining agreements even though the conduct of the employer which is challenged as a breach of contract is also arguably an unfair labor practice within the jurisdiction of the NLRB." Vaca v. Sipes, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966). "The rule is the same . . . where the bargaining agreement contains [as in the instant case] grievance and arbitration provisions which are intended to provide the exclusive remedy for breach of contract claims." Id., 386 U.S. at 184, 87 S.Ct. at 913. The Court's jurisdiction is not destroyed by the fact that the employee attempts to prove an unfair labor practice by the union or joins the union as defendant. Id., 386 U.S. at 186–187, 87 S.Ct. 903.

■■ This Court has pendent jurisdiction of the cause of action asserted against these defendants sounding in tort. The power to entertain such pendent jurisdiction is discretionary, and this Court has entertained such jurisdiction here in the interest of efficiency, since the necessary and proper parties are before the Court. Lomax v. Armstrong Cork Co., 433 F.2d 1277 (5th Cir. 1970), citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966).

■ 2. This Court does not have jurisdiction over the cause of action asserted against defendant Tom Upchurch, Jr., since such cause of action is not founded upon any contract between an employer and a labor organization, which class of contract is a prerequisite for jurisdiction under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. For jurisdictional purposes, the fact that attorney Upchurch had been employed to represent defendant Union in sundry matters is irrelevant to any contract, oral or written, which may have existed between plaintiff and defendant attorney Upchurch.

3. The absence of jurisdiction of the cause of action against attorney Upchurch, as set forth above, is sufficient for dismissal of that defendant from

this lawsuit. In the process of hearing evidence on the causes of action here alleged against the remaining defendants in this lawsuit, this Court has heard in its entirety the evidence presented against defendant attorney Tom Upchurch, Jr., and we conclude that even were there jurisdiction over this defendant, the alleged cause of action is barred by the applicable Texas two-year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5526, since any cause of action would have accrued no later than March 1969.

4. In addition, even were jurisdiction not wanting over the cause of action asserted against defendant attorney Tom Upchurch, Jr., and even were the two-year statute of limitations not controlling, the Court concludes that, based upon the evidence presented, there was no attorney-client relationship or other relationship whence arises any duty on the part of Upchurch toward the plaintiff, nor was such hypothetical duty breached by attorney Upchurch.

5. The plaintiff has dismissed his claim against attorney Buddie Wright, and such claim is hereby dismissed on motion of the plaintiff.

6. The defendant Union, having fulfilled the duties imposed upon it by the contract, Plaintiff's Ex. No. 1, is entitled to judgment denying plaintiff any recovery against said Union. The contract provides that The Union is required . . . to represent all of the employees . . . fairly and equally . . . (Art. 3 § 1(d) (2)). This is but a restatement of the "duty of fair representation" generally imposed by the courts upon labor unions under the National Labor Relations Act. See, e. g., Vaca v. Sipes, *supra*, 386 U.S. at 177, 87 S.Ct. 903; Lomax v. Armstrong Cork Co., *supra*; Acuff v. United Papermakers & Paperworkers, AFL–CIO, 404 F. 2d 169, 171 (5th Cir. 1968), cert. denied, 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969).

It is not the proper province of the Court to evaluate the quality of representation provided by a local union. Encina v. Tony Lama Co., 316 F.Supp. 239 (W.D.Tex.1970), aff'd, 448 F.2d 1264 (5th Cir. 1971). Rather, the Court should "invest [the decisions and actions of union officials in regard to the grievance procedure] with a presumption of honesty and fairness." Stewart v. Day & Zimmerman, Inc., 294 F.2d 7 (5th Cir. 1961). However, a union must not represent an individual employee in a manner which is "arbitrary, discriminatory, or in bad faith," Vaca v. Sipes, *supra*, 386 U.S. at 190, 87 S.Ct. at 916, and must not process a grievance "in a perfunctory manner." *Id.* at 194, 87 S.Ct. 903.

Thus union officials are to be cloaked with wide discretion and latitude in representing employee grievances, Stewart v. Day & Zimmerman, Inc., *supra*, 294 F.2d at 11, and may even refuse entirely to process a grievance. Ostrofsky v. United Steelworkers of America, 171 F.Supp. 782, 793 (D.Md.1959), aff'd, 273 F.2d 614 (4th Cir. 1960). The *Stewart* case, *supra*, is especially relevant to the instant case in that there, as here, the employee claimed that he had been laid off contrary to the seniority rules and that there was a conspiracy between union and employer.

A union, in representing myriads of employees, must be allowed to determine the merits of particular grievances. Vaca v. Sipes, *supra*, 386 U.S. at 194, 87 S.Ct. 903, and if a union prosecutes a particular grievance less than enthusiastically, "it may well have been due to the Local's well-founded belief that the grievance was unjustifiable." Watson v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 399 F.2d 875 (5th Cir. 1968). It is not always possible for a union to act in a way which will benefit each and every employee, and it is often necessary for the interests of a particular employee to be subordinated to the interests of the bargaining unit as a whole. Vaca v. Sipes, *supra*, 386 U.S. at 182, 87 S.Ct. 903.

This is especially true regarding seniority rights, where one employee's gain is often won at the expense of another employee within the same bargaining unit.

Did defendant Union in the instant case breach its duty of fair representation, which it owed to plaintiff, by acting in bad faith or in an arbitrary, discriminatory, or perfunctory manner? We find that it did not. The Union saw to it that the facts (which were relatively simple in nature) were presented on plaintiff's behalf before each and every one of the hearing panels and committees above named. The Union could have refused at any step of the procedure to refuse to process the grievance, but its repeated efforts on plaintiff's behalf constitute compelling evidence of good faith and lack of perfunctory treatment on the part of the Union.

This Court finds it unnecessary to decide whether plaintiff's grievance claim was in itself meritorious, for "a breach of the duty of fair representation is not established merely by proof that the underlying grievance was meritorious." Vaca v. Sipes, *supra,* 386 U.S. at 195, 87 S.Ct. at 919. We find, instead, that plaintiff was in no manner precluded from validly asserting and presenting his claims to the relevant committees and panels. It may well be that a more vigorous application of his energies by the plaintiff would have met with success in the grievance procedure, but such is not for this Court to determine.

7. We find in the facts presented no evidence of fraud on the part of, or collusion or conspiracy between, defendants Union and employer, for the purpose of depriving plaintiff of his rights under the contract. The contract provides that a decision of a majority of the panel of any of the committees "shall be final and binding on all parties, including the employee . . . affected." Art. 7, § 5. Under this clause, the plaintiff is precluded from seeking a court adjudication of whether the employer has breached the seniority provisions of the contract, since the Union has represented the plaintiff fairly and the company has acceded to, and cooperated in, the grievance process pursuant to its obligations under the contract. "Where the grievance procedure provides that the decision is final and binding, the parties will be precluded from subsequently seeking an adjudication in the courts." Lomax v. Armstrong Cork Co., 433 F.2d 1277, 1280 (5th Cir. 1970), citing Haynes v. United States Pipe & Foundry Co., 362 F.2d 414 (5th Cir. 1966). Thus we hold in favor of defendant employer in regard to all claims here asserted against it. This holding is with prejudice in regard to any subsequent action which plaintiff may in the future bring against the employer in regard to the same alleged breach of contract asserted here, and the employer is not estopped from asserting its performance of the contract, and the instant holding with prejudice, as a bar to such hypothetical attempted recovery.

8. Even had there been an actionable breach of contract by defendant employer, or breach of the duty of fair representation by defendant Union, such breach occurred, and such cause of action resulting therefrom accrued, no later than April 26–27, 1967. Hence such claims against defendants employer and Union are barred by the four-year statute of limitations, Tex.Rev.Civ.Stat. Ann. arts. 5527 and 5529, the instant suit having been filed on August 10, 1971. Further, any action in tort is barred by the two-year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5526.

9. Judgment will be entered denying the plaintiff any recovery on his complaint and taxing costs against plaintiff.