**John HARDIN et al., Plaintiffs,**

**v.**

**STRICKLAND TRANSPORTATION COMPANY, INC, et al.,**
**Defendants.**

**No. 73–170C(4).**

United States District Court,
E. D. Missouri, E. D.

Nov. 7, 1975.

Bernard A. Reinert, St. Louis, Mo., for plaintiffs.

John O. Harris, Clayton, Mo., Wiley, Craig, Armbruster & Wilburn, St. Louis, Mo., for defendants.

## OPINION

NANGLE, District Judge.

In this action plaintiffs seek actual and punitive damages, as well as injunctive relief, arising out of a claim of conspiracy to breach a collective bargaining agreement. Counts II and III of plaintiffs' complaint, alleging wrongful discharge of plaintiff Beavers and breaches of duty owed to him as a result of the discharge, were severed from this trial on September 25, 1974.

Having tried the case sitting without a jury the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Each of the plaintiffs is an individual who is or was employed by defendant Strickland Transportation Company, Inc. ("Strickland") as "Over-The-Road" truck drivers. The plaintiffs were so employed at Strickland's Little Rock, Arkansas facility since the following dates:

| John Hardin | July 7, 1961 |
| C. D. DeVault | July 15, 1957 |
| Thomas Faith | June 22, 1957 |
| O. M. Causbie | May 24, 1957 |
| Will D. Jackson | April 30, 1957 |
| H. V. Beavers | April 5, 1960. |

The duties of such drivers consisted of driving company equipment on long hauls in the interstate transportation of goods, wares and merchandise.

2. Defendant Strickland is an interstate common carrier subject to the regulatory provisions of the Interstate Commerce Commission, maintaining terminals and offices in various states, including such locations as Little Rock, Arkansas; Bonne Terre, Missouri; and St. Louis, Missouri.

3. Defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America is a labor organization representing employees in an industry affecting commerce within the Eastern District of Missouri. Its principal office is in Washington, D. C. Defendant International Union has jurisdiction over and within all states of the United States.

4. Defendant Local Union No. 574, an affiliate of defendant International Union, is a labor organization representing employees in an industry affecting commerce within the Eastern District of Missouri.

5. Defendant Local Union No. 574 has jurisdiction to function with respect to drivers domiciled within the Southeastern portion of the State of Missouri.

6. The term "domiciled" in this context refers to the particular facility or terminal out of which the drivers drove on long hauls into the various states.

7. The officers, agents and representatives of Local Union No. 574 are different persons from the officers, agents and representatives of the International Union, each organization electing or appointing its own officers, agents and representatives. The two are separate and distinct labor organizations, each having its own separate autonomy and entity.

8. During all of the period of time that plaintiffs were domiciled at and worked out of their home base in Little Rock, Arkansas, they were members of and represented for collective bargaining purposes by Local Union No. 878, affiliated with defendant International Union. Local Union No. 878 is not a party to this suit.

9. In late 1967 and early 1968, plaintiffs transferred from their domicile in Little Rock, Arkansas, to a new home base in Bonne Terre, Missouri. The Little Rock, Arkansas facility is located within the Southern Conference of Teamsters. By the union security provisions of the collective bargaining agreements of the Southern Conference, plaintiff had been required to be members of Local Union No. 878 while domiciled at Little Rock. The Bonne Terre, Missouri facility is located in the Central Conference of Teamsters and under similar provisions, plaintiffs were re-

quired, upon transfer, to become members of defendant Local Union No. 574.

10. During all relevant time periods, both when domiciled in Little Rock and in Bonne Terre, plaintiffs' employment was subject to the terms and provisions of a collective agreement known as the "National Master Freight Agreement". This master agreement is nationwide in application but is supplemented by other implementing agreements applicable in various sections of the country. When located in Little Rock, Arkansas, plaintiffs worked under the supplement agreement of the Southern Conference of Teamsters. When located in Bonne Terre, plaintiffs were subject to the "Central States Area Over-The-Road Motor Freight Supplemental Agreement". The Central Conference has jurisdiction over and within the following states:

| Michigan | Missouri |
| Ohio | North Dakota |
| Indiana | South Dakota |
| Illinois | Nebraska |
| Wisconsin | Kansas |
| Minnesota | Kentucky |
| Iowa | West Virginia |

Denver, Colorado

11. The relevant provisions of the National Master Freight Agreement and the Central States Supplement thereto are as follows:

ARTICLE 5.

Section 1. Seniority Rights

Seniority rights for employees shall prevail under this Agreement and all Agreements supplemental hereto. Seniority shall only be broken by discharge, voluntary quit, more than a three (3) year lay-off, or for such greater period than three (3) years as a change of operation committee may direct during the third year as provided in Article 8(e) herein, or as provided in any applicable provisions of the Supplemental Agreements. The extent to which seniority shall be applied as well as the methods and procedures of such application shall be clearly set forth in each of the Supplemental Agreements.

.    .    .    .    .    .

Section 5. New Branches, etc.

(a) Opening of new branches, terminals, divisions or operations.

(1) When a new branch, terminal, division or operation is opened (except as a replacement for existing operations or as a new division in a locality where there are existing operations), the Employer shall offer the opportunity to transfer to regular positions in the new branch, terminal, division or operation in the order of their company or classification seniority, to employees in those branches, terminals, divisions or operations which are affected in whole or in part by the opening of a new branch, terminal, division or operation. This provision is not intended to cover situations where there is replacement of an existing operation or where a new division is opened in a locality where there is an existing terminal. In these latter situations, laid-off or extra employees in the existing facilities shall have first opportunity for employment at the new operation in accordance with their seniority. If all regular full-time positions are not filled in this manner, then the provisions of the above paragraph shall apply.

(2) The transferred employees, other than those referred to in the exception to Section 5(a)(1), above shall for a period of 30 days following the transfer, have an unqualified right to return to their old branch, terminal, division or operation if it is still in existence and carry with them their seniority at that old branch, terminal, division or operation. Employees who avail themselves of the transfer privileges because they are on lay-off at their original terminal may exercise

their seniority rights if work becomes available at the original terminal during the three year lay-off period allowed them at their original terminal.

Transferred employees shall have, after 30 days, the same privileges with respect to subsequent transfers set forth in Paragraph 1 above.

. . . . . .

(e) Seniority on Individual Runs on Change of Domicile: When a driver is re-domiciled in accordance with an approved Change of Operations or which is otherwise not in violation of the Agreement, the driver shall carry his prior seniority for that run only. Transferred men under this subsection shall have master seniority for lay-offs and rehiring, but shall accumulate terminal seniority only from the date of transfer for the purpose of bidding on other runs. If such terminal seniority is used to bid on other runs the driver shall lose his right of prior seniority on his original run.

This rule is not intended to apply to those instances described in Article 5, Section (a), (b), and (c) of the Agreement.

. . . . . .

Section 7.

The parties acknowledge that specific situations may arise which may not be covered by the rules set forth in this Article or in which the parties may feel that different treatment of the problem is necessary. In such situation, the Employer, the Unions involved, and the Area, Multi-Conference or National Committees may mutually agree to such disposition of the seniority problems as in their judgment is appropriate under the circumstances. The Change of Operations Committee under the Local Supplements or the National Master Agreement shall have the authority to add

to or modify these rules in specific situations presented to them.

Article 8. Change of Operations.

(2) Present terminals, breaking points, or domiciles shall not be transferred or changed without the Employer first having asked for and received approval from an appropriate committee on change of operations, the members of which shall be appointed by the Joint Area Committee. This committee shall also have jurisdiction over the closing of terminals in regard to seniority. This shall not apply within a 25-mile radius.

The right of the Employer to designate home domiciles shall be observed.

In considering any change of operations, this committee shall have the power to extend the three (3) year layoff period contained in Article 5, Section 1, or in applicable Supplemental Agreements, in the event it appears toward the end of such period that the circumstances warrant.

. . . . . .

ARTICLE 41.

Section 1. Seniority.

Seniority rights for employees shall prevail. Seniority shall be broken only by discharge, voluntary quit, or more than a three-year lay-off, or for such greater period than three (3) years as a Change of Operations Committee may direct during the third year of a change of operations as provided in Article 8(e) herein. In the event of a lay-off an employee so laid off shall be given two weeks' notice of recall mailed to his last known address. In the event the employee fails to make himself available for work at the end of said two weeks, he shall lose all seniority rights under this Agreement. A list of employees arranged in the order of their seniority

shall be posted in a conspicuous place at their place of employment. Stewards shall be granted super-seniority for all purposes, including lay-off, rehire, bidding and job preference, if requested by the Local Union within sixty (60) days after the effective date of this Agreement; but only one (1) steward shall have super-seniority for such purposes. Any controversy over the seniority list shall be submitted to the joint grievance procedure. Terminal seniority, as measured by length of service at such terminal shall prevail excepting in those instances where the Employer, the Unions involved, and the Central States Drivers Council agree to the contrary.

12. Company seniority refers to time worked by an employee for a particular company. Terminal seniority refers to the length of time an employee works at or out of a particular terminal of his company. Dovetailing relates to a system used when employees for the first time begin working at a company facility or terminal where other like employees are already working. When an employee dovetails into the terminal, a new seniority list is prepared and both the new employee and the existing employees are credited with all time worked for the company and given places on the new seniority list called for by their company seniority.

13. The collective bargaining agreements were executed for a term of three years. Provisions were made for company changes in the manner of doing business, including the opening of new terminals and branches as business needs demand. The companies, however, do not have the unilateral right to change operations. Approval must first be obtained from a committee in charge of requested changes. The regulatory provisions of the collective bargaining agreements on this subject are contained in Article 8(e) and read as follows:

Present terminals, breaking points, or domiciles shall not be transferred or changed without the Employer first having asked for and received approval from an appropriate committee on change of operations, the members of which shall be appointed by the Joint Area Committee. This committee shall also have the jurisdiction over the closing of terminals in regard to seniority. This shall not apply within a 25-mile radius.

The right of the Employer to designate home domiciles shall be observed.

In considering any change in operations, this committee shall have the power to extend the three (3) year layoff period contained in Article 5, Section 1, or in applicable Supplemental Agreements, in the event it appears toward the end of such period that the circumstances warrant.

14. In mid-1967, defendant Strickland requested committee approval for changes in operations, including the establishment of a new Missouri terminal, which was later established and maintained at Bonne Terre. Strickland contended that business conditions at Little Rock, Arkansas warranted the changes since, at that time, 54 out of 390 drivers on the seniority list at Little Rock were out of work and on lay-off status because of declining business. It was proposed that on the basis of standings on the Little Rock seniority list, Little Rock drivers be permitted to bid for the right to transfer to the new terminal at Bonne Terre. This new terminal, in the beginning, would require 40 drivers.

15. Because different sections of the United States were involved in the requested changes, the changes were submitted for decision to a joint labor-management "Multi-Conference" committee covering the Central Conference of Teamsters, the Eastern Conference of Teamsters, and the Southern Conference of Teamsters. Twelve persons were on this committee; six were designated by motor carriers other than defendant Strickland and six by teamster organizations other than defendant unions.

16. On July 12, 1967, the joint committee issued its decision which ap-

proved the changes with qualifications. The relevant qualifications are as follows:

1. Men to be allowed to return to Little Rock before new hires for a period of two (2) years. Men to be given one (1) call only and if accepts must be available in fourteen (14) days to return to Little Rock.

.      .      .      .      .      .

8. Employees electing to move will have thirty (30) days to report after bid closes. Employees at Little Rock will have opportunity within one hundred and twenty (120) days from the date the bids close to fill any vacancy or additional requirement for employees at any named points. Employees who stated a preference for one of the points will have by seniority first opportunity to fill it. If there are none, or after they have filled the vacancies, any employee on layoff in Little Rock by seniority will fill it, the company paying moving expenses. Those showing prefernnce [sic] will have one (1) call only.

17. Defendant Strickland then began the process of opening bidding on the basis of seniority to obtain the needed forty drivers in Bonne Terre, Missouri.

18. The bidding was open to all drivers working in or out of the Little Rock terminal. Bidding preferences were on the basis of company seniority. The drivers could bid in three different manners: drivers could bid to stay at Little Rock; drivers could bid for transfer to another terminal, including the new one at Bonne Terre; drivers could "spot bid", which meant that they desired to transfer to another terminal only if they would have a specified standing on the seniority list at the new terminal.

19. At the time of this bidding, and because of the approved change in operations, there were 143 driver positions in Little Rock, rather than 390 as had existed previously. Five of the six plaintiffs bid as their first preference the right to remain at Little Rock. Their bid preference was honored and they did remain in Little Rock. The sixth plaintiff, Beavers, did not receive his first preference (Franklin, Texas) but did obtain his second preference, Little Rock. Thereafter, the forty drivers (not including any of the plaintiffs) needed at the new Bonne Terre terminal were transferred there from Little Rock. Since these forty were the first drivers at Bonne Terre, all forty were placed on the seniority roster at Bonne Terre on the basis of total time worked by each for Strickland.

20. After the forty were transferred, in accordance with the applicable provisions in the collective bargaining agreement, the forty terminated their memberships in Local Union No. 878 and for the first time became members of defendant Local Union No. 574.

21. Plaintiffs remained at the Little Rock facility. Within a short time, however, defendant Strickland decided that due to the continual decline of business in Little Rock, drivers would have to be laid off. Because of their low seniority standing, plaintiffs were among those to be laid off. Business at Bonne Terre was good, however, and additional drivers were needed. Accordingly, plaintiffs were given the option of transferring to Bonne Terre rather than being laid off at Little Rock.

22. Within the one hundred and twenty day period set out in the Change of Operations decision of July 12, 1967, plaintiffs transferred from Little Rock to Bonne Terre and were dovetailed into the existing seniority list and given full company seniority. This new list was prepared and posted on October 8, 1967.

23. The same day, one of the original forty drivers filed a written grievance with defendant Local Union No. 574 protesting the dovetailing. This grievance reads as follows:

Strickland Transportation Co. has sent eight (8) men from Little Rock, Arkansas to the Bonne Terre terminal and put them ahead of me on the Seniority Board. This is a violation of Article 41—Section 1 and 2 of the Master Freight Agreement. I ask to be paid for all time lost due to these eight (8) men.

I also ask that I be sent a transcript of the copy of the committee's ruling on my complaint.

The next day, October 9, 1967, seventeen other drivers of the original forty filed similar grievances with defendant Local Union No. 574. This grievance reads as follows:

This grievance is against the men being sent to Bonne Terre, Missouri, after being laid off in Little Rock, Arkansas, and being dove-tailed on the seniority roster at Bonne Terre, Missouri. This seniority roster had already been established in Bonne Terre, when the people from Little Rock were sent up here. These people are on a letter of lay-off, therefore they are holding seniority in Little Rock and Bonne Terre.

When we bid these jobs we bid a sealed numbered position. We did not know about this until the seniority roster was put up October 8, 1967, if so we would have had a grievance in before now.

24. These grievances were properly filed with Local Union No. 574. As provided for in the collective bargaining agreement, defendant Local Union No. 574 placed them for decision on the grievance docket of the Missouri-Kansas Central States Highway Drivers Council. Article 43, section 1 of the Central States Area Over-The-Road Motor Freight Supplemental Agreement provides that where such a committee settles a dispute, the decision shall be final and binding.

25. The grievances of October 8 and 9, 1967 were heard by the joint labor-management grievance committee of the

Council on November 2, 1967. None of the six committee members were officers, agents, representatives of members of any defendant herein but were the duly constituted contractual grievance committee.

26. The decision of the committee was to deny the grievances. The effect of this determination was to affirm the rights of plaintiffs to be dovetailed on the seniority list at Bonne Terre.

27. Later, additional drivers from Little Rock were transferred to Bonne Terre and dovetailed. On January 8, 1968, seven of the original forty drivers filed a new grievance, again protesting the dovetailing. This grievance reads as follows:

At the close of the one hundred and twenty (120) day time limit the company placed an additional ten (10) men on the Bonne Terre Board.

This move deliberately overloaded the board in Bonne Terre to the extent that the men on the bottom of the board who submitted bids are not working and have been replaced by men who have had the opportunity to go to other terminals or relays, but refused to go. Some of these men did even bid Bonne Terre and have replaced men who did receive positions on the original bid.

As the Change of Operation Committee stated that men in Little Rock would have one hundred and twenty (120) days from the date the bids closed to fill any vacancies or additional requirements. There can be no need for additional men when these men force the original men out of work.

Any sudden overflow of freight could have easily been handled by men out of Little Rock as has been done in the past when we have had men off sick and vacations.

Thereby eliminating the moving of men and families to a strange area on a bid with the promise of work and

forcing him out of work by placing men above him who had bid elsewhere.

We want these men removed and our jobs given back to us.

If these men are entitled to take our jobs by exercising company seniority, which does not exist, then we who have been forced out of work should also be permitted to bid again.

The Company has certainly misrepresented this bid to us. We were lead to believe that we would have the first opportunity for work by accepting these bids.

We did bid and according to the International Agreement and the Central States Agreement we have established our positions and seniority.

The Company has broken these bids.

28. The grievance was properly filed with defendant Local Union No. 574 and placed by the Union on the grievance hearing docket of the Missouri-Kansas Central States Drivers Council.

29. The grievance was heard by the same committee who had composed the panel at the November 2, 1967 grievance hearing. The decision, however, issued on February 7, 1968, referred the claim to the Multi-Conference Committee in Dallas. The reason underlying this referral was the feeling that the grievance involved the meaning, intent and application of the decision of the Change of Operation Committee, the "Multi-Conference Committee".

30. The Multi-Conference Committee referred the questions involved to the National Grievance Committee in Washington, D. C. who in turn referred the matter back to the Missouri-Kansas Central States Council. It was again scheduled for hearing on April 30, 1968. When heard, the committee was composed of some persons other than those who had heard the previous grievances concerning this issue. The decision of the Council was:

The Committee finds that the forty (40) original drivers will retain the forty (40) original bids. Of the eighteen (18) added drivers who had showed Flat River (Bonne Terre) as a preference shall be dovetailed among themselves at the bottom of the original forty (40) drivers. The balance that showed no preference for Flat River (Bonne Terre) will dovetail among themselves at the bottom of the list. There will be no time claims honored as a result of this decision.

31. Accordingly, defendant Strickland prepared and posted a new seniority list, placing plaintiffs below the original forty drivers. On May 27, 1968, eleven Bonne Terre drivers, including plaintiffs, filed their own grievances protesting this last decision of April 30, 1968.

32. These grievances were heard on June 25, 1968 by the Missouri-Kansas Central States Drivers Council. Again the committee was composed of some persons who had previously heard grievances on this issue and some who had not. The decision was as follows:

FACTS: This grievance arose from a continuing problem the Company has experienced involving a change of operations decision by the Southwest Area Committee transferring drivers from Little Rock to Bonne Terre, Missouri. This case has previously been heard by the Missouri-Kansas Grievance Committee, was referred to the Southwest Area Change of Operations Committee, which in turn referred the matter to the Multi-Conference National Committee, which referred the matter back to the Missouri-Kansas Grievance Committee. The sole question involved here is the seniority standing of road drivers transferred from Little Rock to Bonne Terre and their position on the board to transfer in three different groups. The original transfer involved 40 men, however, because a need arose for additional drivers, drivers were later transferred and dovetailed with the original 40 men. By later grievance decision the drivers transferred after the original 40 men were placed at the bottom of the seniority board in a dovetailed position.

*DECISION:* Based on the facts presented, the Committee finds that the April 1968 decision is affirmed.

33. The eleven drivers refiled their claims on July 17, 1968 and the decision was to reaffirm its June 25, 1968 decision.

34. On September 19, 1969, the same eleven drivers, including plaintiffs, filed another grievance which reads as follows:

On or about September 28, 1967, the Strickland Transportation Company notified these complainants to report for duty at Bonne Terre, Missouri. These complainants were available for work and each one pulled runs within the change of operation dates set up by the change of operation committee. At the time of making the transfer to Bonne Terre, these complainants were notified by Ben Shelton (Driver Supervisor), Ray Bartlett (Operation Manager) and Odell Smith (President of Teamsters Local No. 878 at Little Rock, Arkansas) that all the drivers being transferred to Missouri would dovetail into the work schedule and hold their seniority. These men held their seniority for approximately seven months. This seniority program continued until April 30, 1968, until a new decision was made at a joint meeting with the Missouri and Kansas Highway Drivers Council held at St. Louis, Missouri. The new ruling is to the effect that these complainants have terminal seniority only at Bonne Terre, Missouri, and would be placed at the bottom of the seniority board. This is not in accordance with the agreement of transfer. These complainants are being damaged and are requesting a hearing and also that they be placed back in their proper place on the seniority board in Little Rock, Arkansas, with all moving expenses to be paid by Strickland Transportation Company.

35. This grievance requested by way of relief that the grievants be reinstated on the Little Rock roster, be transferred back to the Little Rock terminal and be paid for the expense of moving back.

36. The grievance was heard by the Central States Drivers Council on October 8, 1968. The Council referred it to the Southwest Area Committee. The reason for this referral is the fact that Little Rock is located in the Southern Conference of Teamsters and grievances relating to the Little Rock terminal are handled by the Southwest Joint Area Grievance Committee. Bonne Terre is within the Central States Conference of Teamsters.

37. The Southwest Committee heard the grievance on November 11, 1968 and denied the claims to transfer back to Little Rock. The Committee, however, held that plaintiffs were entitled to be dovetailed on the seniority list at Bonne Terre.

38. On November 19, 1968 defendant Strickland posed a new seniority list dovetailing plaintiffs among the first forty with full company seniority.

39. Twenty-four hours later, at the insistence of defendant Local Union No. 574, the list was withdrawn and plaintiffs were reverted to the bottom of the seniority list.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and of the subject matter pursuant to Section 301 of the National Labor Management Act, 29 U.S.C. § 185.

■ A breach of the statutory duty of fair representation by a union may only be found where "a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith". *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L. Ed.2d 842 (1967). Proof that a grievance is meritorious is not, of itself, sufficient to establish that a union has breached its duty. *Vaca*, at 195, 87 S. Ct. 903.

■ The Court is confronted herein with a situation in which grievances were filed, taken to arbitration, and final decisions were issued. As a result, this Court may not review the merits of the decisions reached but may only determine whether there is fraud, bad faith, demonstrated bias, or collusion. *United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Morris v. Werner-Continental, Inc.*, 466 F.2d 1185 (6th Cir. 1972). The arbitrator, however, must have jurisdiction to arbitrate; without such jurisdiction, the decision is unenforceable. *Gulf & South American Steamship Co., Inc. v. National Maritime Union of America, AFL–CIO*, 360 F.2d 63 (5th Cir. 1966); *In the Matter of the Arbitration between Marcy Lee Manufacturing Company and Cortley Fabrics Co., Inc.*, 354 F.2d 42 (2nd Cir. 1965). The fact that the arbitrator reverses a prior decision upon the filing of a subsequent grievance does not mean that the reversal may not stand as the final decision. *Hood v. Red Ball Motor Freight, Inc.*, 416 F.2d 1242 (8th Cir. 1969).

■ In the present case, numerous grievances were filed, both by the original forty drivers and by the subsequently transferred drivers. The record fails to indicate that defendant Local Union No. 574 in any way discriminated against plaintiffs. The grievances of both groups were accepted by the Union and properly taken before the appropriate arbitration board.

> It is not always possible for a union to act in a way which will benefit each and every employee, and it is often necessary for the interests of a particular employee to be subordinated to the interests of the bargaining unit as a whole. [cite omitted] This is especially true regarding seniority rights, where one employee's gain is often won at the expense of another employee within the same bargaining unit.

*Hensley v. United Transports, Inc.*, 346 F.Supp. 1108 (N.D.Texas 1972)

See also, *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). As each competing group filed a grievance, the Union accepted it and presented it to the grievance panel on behalf of the grievants, its members.

There is a complete lack of evidence in this record from which this Court could conclude that defendant Local Union No. 574 acted in any manner which could be characterized as arbitrary, discriminatory, or in bad faith. Plaintiffs contend that Local Union No. 574 breached the duty owed to plaintiffs when it insisted that the seniority list compiled as a result of the decision of the Southwest Committee be withdrawn and a list prepared in compliance with the June 25, 1968 decision of the Missouri-Kansas Central States Drivers Council be posted. The Court disagrees with this contention. Plaintiffs have agreed that Bonne Terre is located within the Central Conference of Teamsters, whereas Little Rock is located in the Southern Conference. As a result, grievances concerning terminals in each area must be referred to the appropriate grievance committee for that area. The Central States Drivers Council referred the September 19, 1968 grievance filed by plaintiffs to the Southwest Joint Area Grievance Committee for the reason that the grievance concerned a terminal located within its territory. As noted above, where an arbitrator has no jurisdiction to render a decision, the decision may not be enforced. The Southwest Grievance Committee was asked to determine whether plaintiffs should be reinstated at a terminal within their area. There was no jurisdiction to decide that plaintiffs should be dovetailed at a terminal outside their area. Accordingly, it was not enforceable. The insistence on the part of Local Union No. 574 that the decision of the Southwest Grievance Committee not be applied to the seniority

list does not amount to a breach of the duty of fair representation. In this Court's opinion, it was nothing more than an insistence that the proper procedures be followed and respected.

Plaintiffs have not established that the actions of the Local Union were motivated by considerations of political expediency, as was the situation in *Truck Drivers and Helpers, Local Union 568 v. N.L.R.B.*, 126 U.S.App.D.C. 272, 379 F. 2d 137 (1967) nor is there any evidence of hostility on the part of the Local Union toward the subsequent groups of transferees of which plaintiffs are members from which to infer inadequate representation at the arbitration proceedings. See *Butler v. Yellow Freight System, Inc.*, Nos. 74–1342 and 74–1567 (8th Cir. March 18, 1975).

The record establishes that Local Union No. 574 properly submitted the grievances filed by each of the contesting groups it represented. There is a complete lack of evidence from which to conclude that the duty of fair representation has been breached. Similarly, there is a complete lack of evidence from which to conclude that defendant International Union was in any way involved in any alleged breach of this same duty or to conclude that defendant Strickland was anything more than a neutral figure in these disputes.

The Court emphasizes that the merits of the grievance, and the soundness of the decision reached as a result of arbitration are not for this Court to determine. This Court has found no evidence of fraud, bad faith, bias or collusion in the decisions of the arbitration panels. This Court finds no actions on the part of the Unions which could be characterized as arbitrary, discriminatory or in bad faith. Such evidence lacking, the claims asserted against defendant Strickland must fail. *Vaca v. Sipes*, 386 U.S. at 186, 87 S.Ct. 903. Furthermore, the Court finds no evidence which establishes that defendant Strickland has conspired with the other defendants to breach the collective bargaining agreement or to refuse to afford plaintiffs the grievances procedures to which they are entitled. The record establishes solely that the defendants submitted the issues to the grievance panels and abided by the decisions reached when the decisions were reached in accordance with the proper procedure. Accordingly, judgment will be for the defendants.