Julian ENCINA, Plaintiff,

v.

TONY LAMA COMPANY, Inc., et al., Defendants.

. Civ. A. No. EP–70–CA–46.

United States District Court, W. D. Texas, El Paso Division.

Aug. 10, 1970.

Fred Weldon, Jr., El Paso, Tex., for plaintiff.

Woodrow W. Bean, El Paso, Tex., for defendant, Tony Lama Co., Inc.

L. N. D. Wells, Jr., Dallas, Tex., for defendant Amalgamated Meat Cutter and Butcher Workmen of North America AFL–CIO, and Amalgamated Meat Cutter and Butcher Workmen of North America AFL–CIO, Local Union 505.

GUINN, District Judge.

On the 31st day of July, 1970, came on to be heard the Motions for Summary Judgment filed by the Plaintiff and the Defendants, and the Court having received the exhibits and stipulations of the parties, and heard the oral argument of the attorneys, and considered the briefs filed in support of said Motions, does find that the Motion for Summary Judgment filed by the Plaintiff should be denied, and the Motion for Summary Judgment filed by the Defendants should be granted, and does hereby make the following Findings of Fact and Conclusions of Law, and enters the following Opinion and Judgment thereon.

## FINDINGS AND CONCLUSIONS
### Nature of the Case

Plaintiff Encina a long-time employee of defendant Tony Lama Company, Inc., is a member of defendant Local 505, which is chartered by defendant International Union.

Encina sues his employer Lama under 29 U.S.C. § 185 claiming that he was discharged without just cause in violation of and denied rights under the collective bargaining agreement between Lama and defendant unions. Plaintiff also asserts that defendant unions have, since November 1, 1968, breached their alleged duty to fairly represent Plaintiff with respect to wages, hours and conditions of employment.

Plaintiff seeks $75,000.00 damages jointly from all defendants, reinstatement to his employment with Lama, with restoration of seniority; or alternatively, that his claim be arbitrated, and specifically that defendant unions be ordered to present and process Plaintiff's grievance through arbitration, and to pay costs thereof.

All parties have presented motions for judgment. Extensive pre-trial discovery has brought before the Court by deposition, affidavits, exhibits, and (by stipulation) testimony under oath by plaintiff and others in proceedings before the Texas Employment Commission relating to the reasons for termination from Lama employment of plaintiff and others. All parties have presented extensive briefs, and oral argument, on the motions for judgment. On the basis of this record the Court finds that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. The facts thus established are:

### The Material Facts

Plaintiff Encina has been employed by defendant Lama for more than thirty years. At all times material to this suit he was a member of defendant Local 505, which in turn is chartered by defendant International Union.

Lama and the unions entered into a collective bargaining agreement effec-

tive October 30, 1968, until October 29, 1970, and thereafter until terminated or modified according to its terms.

The agreement, applicable to plaintiff and several hundred other employees provides that the local union is the exclusive bargaining agent and further provides:

"Article 3. NO STRIKE OR LOCK-OUT. The employer will not cause, permit or engage in any lock-out of its employees during the term of this Agreement. The Union will not authorize, cause, permit or engage in any strike, slow down, or work stoppage against the Employer during the term of this Agreement."

The agreement further provides:

"The Employer shall have the right of * * * direction of the working force * * * and for reasonable cause to discipline, * * * employees * * *"

Further, the contract provides:

"The Employer reserves the right to discharge any employee for just cause."

The agreement contains an elaborate grievance procedure—one of the requirements of which is that: "Grievances or disputes regarding alleged improper disciplinary lay-off or discharge must be filed in writing within three (3) working days after receipt of such lay-off or discharge. (Art. 11, Subsection 2). Plaintiff did not file as required by the cited provision.[1] His attorney did so, on December 2, 1969, more than a month after the discharge.

The collective bargaining agreement grants to the Local Union "final authority" to decline to process any grievance. Specifically, it provides (Article 11, Sec. 2, subsection 2, ¶ 3, p. 10):

"At any step in this grievance procedure, the Local Union shall have the final authority, in respect to any aggrieved employee covered by this Agreement, to decline to process a grievance, complaint, difficulty or dispute further if in the judgment of the Local Union such grievance or dispute lacks merit or lacks justification under the terms of this Agreement, or has been adjusted or justified under the terms of this Agreement to the satisfaction of the Union."

Prior to the execution of the above agreement on November 19, 1968, there had been no collective bargaining agreement affecting this employer or these employees. Although the agreement forbade strikes, as aforesaid, within the first few months there were several strikes of short duration, which the employer condoned.

When another strike occurred in April 1969, the employer wrote Local 505 advising "This is the third and last violation of Article III that the company will tolerate. We believe that by this time all employees should understand the law and the contractual agreement covering strikes, slowdowns and work stoppages during the term of the contract. To insure the above understanding and because of the seriousness of this kind of violation, the company will attach to each paycheck, in English and Spanish a statement quoting the contract language and expressing the company's position on future incidents of this nature."

The company did attach such statement to the employees' paychecks, viz:

"ATTENTION ALL EMPLOYEES

The following language is quoted from the Company Union Contract:

ARTICLE III

NO STRIKE OR LOCK–OUT. The Employer will not cause, permit or engage in any lock-out of its employees during the term of this Agreement.

[1]. Plaintiff's counsel asserted on oral argument that when plaintiff sought reinstatement on November 6, 1969, he filed a grievance. I am unable to find any evidence in the record supporting this assertion. Plaintiff's brief asserts that he filed a new application "in an effort to get back to work *and grieve later.*" (Emphasis added).

The Union will not authorize, cause, permit or engage in any strike, slow down, or work stoppage against the Employer during the term of this Agreement.

There have been three violations of this provision since the contract was signed. The company has exercised restraint believing that some employees might not understand the seriousness of these violations.

However, in the future any employee who strikes, participates in a work stoppage or slowdown in violation of Article III shall be discharged or disciplined depending upon their participation in the illegal activity.

TONY LAMA COMPANY, INC."

On October 31, 1969, plaintiff Encina along with more than a hundred other employees engaged in another work stoppage. Plaintiff says that he "ceased work operations in protest of * * * the jailing of a fellow worker and the bad treatment received from the foreman." While plaintiff denied intention to strike, he acknowledged his intention "just to make a work stoppage to make the company put that man out of jail" and to try to bring some grievances to the attention of the employer. I find that plaintiff's action in concertedly ceasing work with other employees was a "strike" or "work stoppage" within the meaning of the collective bargaining agreement. Moreover, on the argument herein plaintiff's counsel admitted that plaintiff struck.

Plaintiff and the other strikers were told to go back to work. In plaintiff's own words, supervisors Vargas and Montelongo " * * * told us to work or get out * * *" Plaintiff and more than a hundred others refused to work and left the building.

The strikers, including plaintiff, thereupon congregated outside the Lama plant at about 10:30 a. m. Employer thereupon made the following announcement, in both English and Spanish:

"ATTENTION ALL EMPLOYEES

THE 'WALK OUT' OF EMPLOYEES IS AN ILLEGAL STRIKE. IT IS A 'WILD CAT' STRIKE.

THE COMPANY HAS DECIDED TO TAKE THE FOLLOWING ACTION: ANY EMPLOYEE NOT AT HIS JOB WORKING AT 12:30 TODAY IS TERMINATED. THOSE EMPLOYEES WHO HAVE WALKED OUT AND RETURN TO WORK BY 12:30 TODAY SHALL RECEIVE DISCIPLINARY LAY OFFS OF BETWEEN ONE TO FIVE DAYS.

WE ARE ADVISING YOU OF YOUR RIGHTS, AND WHAT ACTION THE COMPANY WILL TAKE SO THAT YOU MAY MAKE YOUR OWN DECISION AS TO CONTINUE ON THE JOB OR TO STRIKE.

TONY LAMA COMPANY, INC."

Plaintiff, and the other strikers, ignored this notice.

Thereupon, at about 11:00 to 11:30 a. m. one Monzano, the chief union steward who stayed in and worked, came out of the plant to address the strikers. As plaintiff admitted, "He (Monzano) told us that if we didn't come to work by 12:30 we were going to be fired * * *"

Again, shortly after 12:30 p. m. Monzano returned to the strikers and advised them that they were fired.

Plaintiff's affidavits and testimony in the T.E.C. hearings establish that plaintiff knew that the collective bargaining agreement was in effect, that it forbade strikes or work stoppages, and that the procedures it provided should be followed.

On November 6, 1969, plaintiff abandoned the strike and attempted to return to work. He was told by a management representative that he would not be reinstated, but that his application as a "new" employee would be considered.

Thereafter on December 2, 1969, plaintiff's attorney filed a grievance in plaintiff's behalf, and sought to arbitrate it. The Federal Mediation Service

would not appoint an arbitrator in the absence of request for arbitration by the local union.

 Thereafter the local union sought to discuss a grievance on behalf of plaintiff and others. Defendant Lama refused on the grounds *inter alia* that: " * * * all issues relating to the termination of employees for violation of the no-strike clause of our agreement are expressly excluded from the grievance and arbitration procedure * *," relying on the last paragraph of Article 12 of the agreement which provides that any alleged violation of the no-strike—no-lock-out article "shall not be subject to the grievance or arbitration provisions hereof." [2]

Thereafter, on March 9, 1970, the local union advised plaintiff, through his attorney, that at a meeting of local union members a large majority decided not to proceed with plaintiff's grievance. Only plaintiff and one other wished to proceed.

The local union's refusal to proceed further with plaintiff's grievance was based principally upon the expense of the arbitration, and the highly speculative prospect of obtaining reinstatement for one who in the face of repeated warnings had wilfully engaged in a strike, despite the "no-strike" provisions of the collective bargaining agreement.

Plaintiff thereafter filed charges with NLRB, which after full investigation were dismissed on two grounds—that the contract did not permit arbitration of the grievance, and that plaintiff had engaged in unprotected conduct in striking in violation of the contract.

## OPINION

In apparent attempt to support the claim of "failure of fair representation" plaintiff has submitted evidence of an accumulation of grievances (none of which are shown to affect plaintiff individually); of local union steward's and officer's alleged ineffectiveness in settlement thereof; of talk of strike among employees and a union steward; and of the union's failure to take any of several grievances to arbitration. The specific nature of these grievances is not detailed.

On the other hand there is evidence that many grievances were settled satisfactorily at early stages of the grievance procedure. This settlement at early stage appears to be contemplated by the contract. Cf. Article 11, § 2. And the failure to arbitrate in those instances where no arbitration was had is excused, the union says, by lack of proof of necessary elements of contract violation.

 In the Court's view these matters are irrelevant and immaterial to plaintiff's claim against these defendants. This Court has no power to evaluate the quality of representation provided by this local union. Whether the union is good or bad, effective or ineffective has no bearing on the issue in the case which is: Was the Local Union's conduct toward plaintiff arbitrary, discriminatory, or in bad faith?

Even if plaintiff could show that the union representation had been of poor quality (which is by no means established), he would not have met the burden which is upon him in this suit to show that the union's actions in refusing to

---

2. Plaintiff asserts in brief and at oral argument that this provision binds only the employer and the union, and does not preclude arbitration of plaintiff's claim of no "good cause" for discharge. NLRB officials held to the contrary in an opinion letter dismissing plaintiff's claim for reinstatement and back pay. This Court adopts the NLRB view. Whether bound as a matter of law by the NLRB determination need not be here decided, for in any event the NLRB determination is entitled to great weight; and in any event the Court, independently of the agency determination, finds that the collective bargaining agreement forecloses arbitration of plaintiff's grievance—for the parties have provided that violation of the no-strike provision "shall not be subject to the grievance or arbitration provisions hereof."

arbitrate his case were arbitrary, discriminatory or in bad faith *vis-a-vis* plaintiff. There is no evidence that union conduct with regard to plaintiff was arbitrary, discriminatory or in bad faith.

To obtain the relief which plaintiff here seeks, it must be shown that the contract provided plaintiff rights which have been denied him, and additionally, that there was arbitrary, discriminatory, or bad faith conduct on the part of the union in processing or refusing to process the grievance. Plaintiff has failed to present any evidence in support of either necessary element of his case.

■■■ By way of summary, Plaintiff claims that his discharge was not for "good cause" under the contract. The contract commits such disputes exclusively to the grievance procedure,[2a] and accords to the local union sole control of employee access to the arbitration procedure. The union has declined to process plaintiff's grievance to arbitration. Plaintiff may not avoid the requirements of the contract and himself compel arbitration.

All parties to this suit, and the Lama employees, are bound by the collective bargaining agreement. Plaintiff in this proceeding, has only such rights as are there specified. These rights may be vindicated through the grievance procedure—but only as there provided. The sole exception being that where the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance, the wrongfully discharged employee may then bring an action against his employer. Vaca v. Sipes, 386 U.S. 171 at 186, 87 S.Ct. 903, 17 L.Ed.2d 842. Here the exception does not apply, for the undisputed facts establish that the union did not breach its duty of fair representation in its handling of plaintiff's grievance.

The Court notes further that plaintiff requests alternative relief, i. e. that without regard to the grievance-arbitration provisions of the contract the defendant Lama be ordered to reinstate plaintiff to his old or substantially equivalent job with back pay and damages. This Court denies this relief on two grounds. First, the contract does not so provide—as we have seen, its provision for arbitration is not here applicable.

Second, if the contract be construed as permitting an employee's direct access to the Court, without regard to the grievance procedure,[3] the Court on the undisputed facts would deny the relief; for in the Court's view the plaintiff's actions as disclosed by the undisputed testimony constituted "good cause" for discharge.

In any event, the Court would no more substitute its judgment for that of the employer or the union than would the arbitrator, and the collective bargaining agreement is clear that the arbitrator "shall not substitute his judgment for the judgment of either of the parties, nor add meanings to the agreement which were not negotiated."

Again, plaintiff, his union and the employer are bound by the collective agreement. 29 U.S.C. § 185 gives this Court jurisdiction to enforce contracts between employers and labor organizations. We are not empowered to ignore the plain contract language, or to enlarge upon the remedies there provided; if we were, still we would grant defendant's motions for judgment, for the undisputed facts require the following conclusions:

## CONCLUSIONS OF LAW

### 1.

This Court has jurisdiction over defendants Lama and Local 505 under 29 U.S.C. § 185. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

---

**2a.** Except alleged violation of the no-strike provision. See note 2, *supra.*

**3.** In the Court's view the contract is not susceptible of such construction. There is good policy behind the long line of decisions cited below which assure industrial peace by subordinating an individual's claim to the decision of those responsible for the grievance—arbitration procedures; subject, of course, to the duty of "fair representation."

**2.**

Defendant employer had no duty to arbitrate plaintiff's claim. The agreement commits disputes as to "good cause" for discharge exclusively to the grievance procedure, and accords to the union sole control of access to the arbitration procedure. This provision is valid and is binding upon plaintiff, and employer is entitled to rely upon such provision.

**3.**

Defendant employer's duty to arbitrate is only that which the collective bargaining agreement requires. The agreement here permits arbitration only of those grievances which clearly involve an alleged violation of a provision of the Agreement or an allegation that it has not been properly interpreted or applied.

Even then, according to the contract, only the union or the employer may request arbitration. Individual employees may not, under the terms of the contract require arbitration.

The wisdom of the parties in eschewing arbitration on the undisputed facts of this case is apparent. To require arbitration, as plaintiff requests, would be to grant more than the contract provides. This the Court has no power to do. If it had such power it would not exercise it in this case for the Court believes there are valid policy reasons in support of the union's discretionary right to abandon individual grievances. See Acuff v. United Papermakers and Paperworkers, AFL-CIO, 404 F.2d 169 (5th Cir. 1968), cert. den. 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762. Especially is this so here, where plaintiff seeks reinstatement and money award to vindicate his actions in striking despite a "no strike" provision in the contract, and despite redundant warning that he should not do so. The union is to be commended for ending the controversy here; it is not to be censored for refusing to prolong the dispute.

**4.**

Plaintiff has no standing to substitute himself for the local union as the enforcement agency of the collective bargaining agreement, Ostrofsky v. United Steelworkers of America, 171 F.Supp. 782 (D. Md.1959), aff'd per curiam, 273 F.2d 614 (4th Cir. 1960); cert. den. 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732; Stewart v. Day and Zimmerman, et al., 294 F.2d 7 (5th Cir., 1961); Vaca v. Sipes, *supra*. Plaintiff is bound by the terms of the agreement (Article 11, § 2, ¶ 3, quoted above) which grants to the local union final authority to refuse to proceed with a grievance.

**5.**

Defendant Local Union did not breach any duty of fair representation by refusal to arbitrate the claim of plaintiff. A union does not owe a duty to arbitrate each and every grievance; it is entitled as here, to take into account the expense of arbitration, the requirements of the collective agreement, and the highly speculative chance of prevailing. Authorities *supra*.

**6.**

Defendant Local Union's conduct toward plaintiff was not arbitrary, discriminatory or in bad faith; to the contrary, it was consistent with the union's collective bargaining responsibilities, reasonable in the circumstances, and within the area of the union's discretion under the collective agreement.

**7.**

Plaintiff fails to state a federal claim against Defendant International. The collective bargaining agreement specifies that the Local Union is "the exclusive bargaining agency * * *" The duty of representation which plaintiff asserts arises from the federal statutory privileges accorded to the exclusive bargaining agent. Such duty is not imposed upon the International Union which is not the exclusive bargaining agency.

Accordingly, summary judgment for defendants is hereby granted.