**Charles Herbert FOX**

v.

**MITCHELL TRANSPORT, INC., et al.**

**Civ. No. Y–80–1596.**

United States District Court,
D. Maryland.

Feb. 3, 1981.

Harry Goldman, Jr., Baltimore, Md., for plaintiff.

Jeffrey Rockman, Baltimore, Md., Gregory J. Miller and William W. Allport, Cleveland, Ohio, for defendant Mitchell Transport, Inc.

Hugh J. Beins and Jonathan G. Axelrod, Bethesda, Md. and Oliver D. Long, Washington, D. C., for defendants Intern. Broth. of Teamsters Local No. 992 and Eastern Conference of Teamsters.

JOSEPH H. YOUNG, District Judge.

## MEMORANDUM OPINION AND ORDER

The plaintiff, Charles Herbert Fox, has brought this action pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) seeking to have his seniority rights restored and to recover damages. The defendants, Mitchell Transport, Inc. ("Mitchell"), International Brotherhood of Teamsters Local No. 992 ("Local 992"), and Eastern Conference of Teamsters ("Conference"), have all filed motions for summary judgment.

This action arises out of a dispute regarding the hiring date assigned to the plaintiff for company seniority purposes. The plaintiff contends that his seniority date should be listed as March 25, 1963. The defendants concede that plaintiff was hired by Mitchell as of that date but argue that he did not approach "regular" status until approximately April 15, 1963 and, therefore, the latter date should properly be used for seniority purposes. Determination of which side is correct regarding the plaintiff's employment status during that three-week period in 1963 would not only be highly speculative, but would also fail to resolve the issues in this action which has been brought pursuant to section 301 of the LMRA. Nonetheless, a brief history of this seniority dispute provides the appropriate context for a consideration of the merits of this action.

The plaintiff worked as a truck driver for Mitchell at its Union Bridge terminal until March, 1965 when he transferred to their Baltimore terminal. At both locations, plaintiff was a member of the local Teamsters Union and therefore covered by the provisions of the collective bargaining agreement. Under the terms of that agreement, Mitchell was required to post a copy of the seniority list each month and an employee was then given ten days from the date of posting to contest any information considered incorrect. The plaintiff's seniority date was listed as April 15, 1963 until October of 1966 when someone crossed it out and changed it to March 25, 1963. Until the plaintiff's transfer back to Union Bridge in April of 1977, all seniority lists apparently gave the plaintiff's date of hiring as March 25, 1963, although he was still listed below another employee who had a seniority date of April 1, 1963. When the plaintiff arrived at the Union Bridge terminal in April of 1977, his seniority date was listed as April 15, 1963 and two additional employees with seniority dates of April 1, 1963 were placed ahead of him on the seniority list. Plaintiff did not grieve this listing at that time and, because of unrelated litigation in this Court, no new seniority lists were posted until September of 1978. When the September, 1978 seniority list was posted with the plaintiff's seniority date given as April 15, 1963, he contacted Local 992 Business Agent Racie Sherman and claimed that the date given on the list was incorrect. As a result of that meeting, no formal grievance was filed, but Mitchell did agree to change the plaintiff's seniority date to March 25, 1963. When the November seniority list was posted with the plaintiff's new seniority date, three employees who were thereby passed in seniority by the plaintiff, filed formal grievances. A hearing was held before the Eastern Area Tank and Cement Haul Joint Committee ("Joint Committee") on December 20, 1978, and they decided that the April, 1977 seniority list, giving the plaintiff's seniority date as April 15, 1963, was correct as it had not been protested by any of the employees under the provisions of the collective bar-

gaining agreement. In accordance with that decision of the Joint Committee, the January, 1979 seniority list gave the plaintiff's seniority date as April 15, 1963. This time the plaintiff filed a formal grievance but the Joint Committee maintained its position that since the April, 1977 list had not been protested in accordance with the provisions of the collective bargaining agreement, the dates on that list would not be altered. After receiving the decision of the Joint Committee in January of 1979, the plaintiff consulted an attorney and filed this action on June 23, 1980.

*JURISDICTION*

■■■ The plaintiff has based jurisdiction on § 301 of the LMRA, 29 U.S.C. § 185, which provides a federal cause of action for the enforcement of collective bargaining agreements:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

Under this provision, individual employees can protect their personal, individual rights. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Smith v. Evening News Assn.,* 371 U.S. 195, 198–200, 83 S.Ct. 267, 269–270, 9 L.Ed.2d 246 (1962). Section 301 suits, however, may only be brought against those who are parties to the contract. *Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d 211, 216–17 (3d Cir.), *cert. denied,* 444 U.S. 837 100 S.Ct. 74, 62 L.Ed.2d 48 (1979). Similarly, when the claim is for breach of the duty of fair representation under the contract, only the employee's collective bargaining agent can be liable. *Encina v. Tony Lama, Inc.,* 316 F.Supp. 239, 245 (W.D.Tex.1970), *aff'd,* 448 F.2d 1264 (5th Cir. 1971). In the present case, the Eastern Conference of Teamsters, named as a defendant, is not a party to the collective bargaining agreement and represents no employee directly. Thus, this Court lacks jurisdiction over the Conference under § 301 and the Conference will be dismissed as a party to this action.

*STATUTE OF LIMITATIONS*

Defendants have asserted that the plaintiff's claim under § 301 of the LMRA should be barred by the applicable statute of limitations. They contend that because there is no federal statute of limitations applicable to § 301 actions, this Court should apply the thirty-day statute of limitations contained within the Maryland Uniform Arbitration Act, Md.Cts. & Jud.Proc. Code Ann. § 3–224. Although it is true that there is no applicable federal statute of limitations, this Court is of the opinion that the more appropriate statute of limitations to apply in this case is general three-year period of limitations provided in Md.Cts. & Jud.Proc.Code Ann. § 5–101 and that, therefore, the claim of plaintiff should not be barred as a result of its filing this action approximately eighteen months after the Joint Committee's decision.

■■■ Where no applicable federal statute of limitations exists, the question of timeliness of a § 301 action is to be determined by reference to the appropriate state statute of limitations. *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), AFL–CIO v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966). However, that determination is to be made as a matter of federal law, including the characterization of the action for the purpose of selecting the appropriate state limitations provisions. *Hoosier Cardinal, supra* at 705–706, 86 S.Ct. at 1113. The Court should characterize the action in the manner that "best effectuates the federal policy at issue." *Butler v. Local Union 823, International Brotherhood of Teamsters, etc.,* 514 F.2d 442, 446 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). An important federal policy underlying § 301 actions is that of providing employees with the opportunity "to secure individual redress for damaging failure of the employer to abide by the

[collective bargaining] contract." *Hines v. Anchor Motor Freight, Inc., supra*, 424 U.S. at 571, 96 S.Ct. at 1059. Defendants correctly contend that a decision of the Joint Committee is to be regarded for purposes of § 301 in the same manner as an arbitrator's award. *General Drivers and Warehouse Local 89 v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963). However, the Supreme Court has strongly indicated that the policy of according finality to arbitration awards is outweighed by the federal policy of providing employees with a forum in which to challenge such decisions where there are allegations of bad faith representation by the unions. *Hines, supra*, 424 U.S. at 571, 96 S.Ct. at 1059. Furthermore, a recent decision by the Second Circuit Court of Appeals held that wrongful discharge actions brought under § 301 should not be governed by the ninety-day New York state statute of limitations applicable to arbitration awards. *Mitchell v. United Parcel Service*, 624 F.2d 394, 396–98 (2d Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 265, 66 L.Ed.2d 127 (1980). That court was motivated not only by the important federal policy of providing a forum under § 301 to aggrieved employees, but also by the lack of any necessity for applying the shorter limitations periods generally applied to challenges of arbitration awards. *Id.* Plaintiffs in § 301 actions are already under a heavy burden in that they must show not only that the company violated the collective bargaining agreement but also that the union breached its duty of fair representation. *Hines, supra* 424 U.S. at 570–71, 96 S.Ct. at 1059. To require potential plaintiffs to assess their claims and decide whether to bring a § 301 action within the thirty-day period provided in the Uniform Arbitration Act would result in the premature filing of meritless claims, the time-barring of meritorious claims, or both. This is particularly true where the plaintiff was not represented by any counsel in the proceedings before the Joint Committee and could not reasonably be expected to have a § 301 action brought on his behalf within the thirty-day period. Thus, under the facts of the present case, this Court holds that application of the gen-eral three-year state statute of limitations "best effectuates the federal policy at issue" in a § 301 action. The plaintiff filed this action approximately eighteen months after the decision of the Joint Committee and is thus well within the applicable statute of limitations.

## EXHAUSTION OF REMEDIES

■ Defendants have also sought to have plaintiff's complaint dismissed because he allegedly failed to exhaust his internal union remedies. They assert that, after receiving the decision of the Joint Committee, he should have resorted to the internal union procedures established by the Teamster Constitution. This Court agrees with the general policies underlying the exhaustion requirement in order to prevent undue judicial interference with the internal affairs of a labor organization before the union has had at least some opportunity to resolve disputes concerning its own affairs. *See Fabian v. Freight Drivers and Helpers Local No. 557*, 448 F.Supp. 835, 838 (D.Md. 1978). However, in the present case, plaintiff has presented this Court with a final and binding determination by the Joint Committee and no useful purpose would be served by sending him back to the union to pursue whatever intra-union grievance procedures made available to him. The provisions of the union constitution relied upon by defendants would not be likely to provide any relief to the plaintiff in a situation such as the present one. Article XIX of the Constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America does require, in Section 12(a), that a member exhaust all remedies before resorting to a court. However, that article is concerned with disciplinary charges brought against union members, officers or other union bodies and does not provide a means for seeking relief from an adverse decision of the Joint Committee concerning the terms of the collective bargaining agreement in a dispute involving the employer as well. *Miller v. Gateway Transportation Co., Inc.*, 616 F.2d 272 (7th Cir. 1980). Furthermore, Section 12(c) of Article XIX of the union constitution ex-

pressly excludes "collective bargaining matters" from the appeals procedure provided for therein. The situation in the present case is thus quite different from that presented in *Wiglesworth v. Teamsters Local Union No. 592,* 552 F.2d 1027 (4th Cir. 1976), *cert. denied,* 431 U.S. 955, 97 S.Ct. 2676, 53 L.Ed.2d 271 (1977), where the Court required exhaustion of union remedies in a purely intra-union dispute. The plaintiff here has brought this § 301 action against both the union and the employer on the basis of a final and binding decision of the Joint Committee. The opinion in *Vaca v. Sipes,* 386 U.S. 171, 185–88, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967), clearly contemplated that the most appropriate method of resolving such disputes would often be the bringing of § 301 actions against both the union and the employer. In addition, the holding in *Vaca* that an employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union breached its duty of fair representation, 386 U.S. at 186, 87 S.Ct. at 914, indicates that exhaustion requirements are not to be applied blindly where the result of further non-judicial proceedings would be unlikely to settle the dispute or provide the relief sought. In the present case, resort to the internal union procedures would be of little or no help to the plaintiff in seeking to have his seniority status altered, and it is appropriate for this Court to consider the merits of the plaintiff's claims within the context of this § 301 action.

### MERITS OF § 301 CLAIM

To prevail in this action brought pursuant to § 301 of the LMRA, 29 U.S.C. § 185(a), the plaintiff must prove that the terms of the collective bargaining agreement were breached and that the union breached its

duty of fair representation. *Vaca v. Sipes, supra* at 193–95, 87 S.Ct. at 918–19. The Fourth Circuit has approved of the use of summary judgment in § 301 actions where the evidence demonstrates that no substantial controversy as to any material fact exists. *Walden v. Local 71, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 468 F.2d 196, 197 (4th Cir. 1972). In the present case, both sides have had a full opportunity for discovery and the Court ·has had the opportunity to consider extensive deposition testimony, affidavits and written briefs in support of and in opposition to the motions for summary judgment. Consideration of all this material leads to the conclusion that there is no substantial controversy as to any *material* fact and that the plaintiff can show neither that the collective bargaining agreement was breached nor that the union breached its duty of fair representation. Thus, summary judgment in favor of the defendants is appropriate.

■ Section 301 authorizes federal courts to exercise jurisdiction over suits brought to enforce collective-bargaining agreements. To prevail in such a suit, the plaintiff must demonstrate that the terms of such an agreement were breached. *Vaca, supra; Hines, supra* 424 U.S. at 570, 96 S.Ct. at 1059. The plaintiff here asserts that the employer breached the collective bargaining agreement by failing to provide him with the proper hiring date for purposes of the company seniority list.* There can be no doubt that a genuine controversy exists over which date, March 25, 1963 or April 15, 1963, should properly be assigned to the plaintiff for seniority purposes. However, that controversy is not material for purposes of this action because the terms of the collective bargaining agreement expressly provide a procedure to be followed with

---

* Plaintiff also alleges that Mitchell breached the agreement by failing to post month seniority lists at the Union Bridge Terminal from April, 1977 to September, 1978. Defendant Mitchell apparently concedes that monthly lists are required by Section 5.2(b) of the agreement. (Memorandum in support of motion for summary judgment filed by Mitchell Transport, Inc., November 3, 1980, pp. 13–14). The lan-

guage of that provision, however, would not seem to require such postings except at the beginning of each new agreement. In any case, the failure of Mitchell to post these lists, whether required or not, is irrelevant to this action since plaintiff admits that a seniority list was posted in April, 1977 when he transferred to Union Bridge and that he did *not* complain to anyone about his seniority date on that list.

respect to such controversies and the defendants have adhered to the terms of that procedure. Under Article 5, Section 5.2(b) of the agreement, claims for corrections to posted seniority lists must be made to the employer within ten days after posting, "and after such time the lists will be regarded as correct." Despite all the accusations and insinuations in this case regarding what transpired during the early years of plaintiff's employment with Mitchell, it is unquestionably clear that a seniority list was posted for April, 1977, listing the plaintiff's seniority date as April 15, 1963, and that the plaintiff did not present a complaint about that list to anyone. Under the express terms of the agreement, that date could then be regarded as correct. When the plaintiff decided to file a formal grievance regarding the January, 1979 seniority list, the grievance procedures set forth in Article 7 of the agreement were followed and the Joint Committee decided that the plaintiff's failure to dispute the April, 1977 list within ten days rendered the dates of that list correct. The dispute over the correct seniority date was resolved under the terms of the collective bargaining agreement, to which the plaintiff, Mitchell, and Local 992 were all parties, and the plaintiff received the seniority date dictated by Section 5.2(b) of the agreement. The plaintiff's contention that this Court should go beyond the terms of the collective bargaining agreement and entertain his arguments regarding the date on which his seniority actually began to accrue is not only contrary to the terms of that agreement but unreasonable as well. However, the inability of the plaintiff to prove any breach of the collective bargaining agreement is not the only obstacle to his obtaining relief under § 301. Even if this Court was willing to ignore the express terms of the collective bargaining agreement and undertake the task of attempting to decide what actually happened in the Spring of 1963, this § 301 action would still fail because the facts clearly demonstrate that the union did not breach its duty of fair representation.

The doctrine of the "duty of fair representation" was first recognized by the Supreme Court in the context of racial discrimination under the Railway Labor Act. *Steele v. Louisville & N. R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The duty was extended to § 301 of the National Labor Relations Act in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). Recognizing the responsibilities conferred upon a union by its exclusive agency status, the Court nonetheless declared that a union is permitted "a wide range of reasonableness," which must be "subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Id.* at 337–338, 73 S.Ct. at 685–86. The Supreme Court attempted to further clarify this general doctrine in *Vaca v. Sipes, supra* 386 U.S. at 190, 87 S.Ct. at 916, where it declared that, "A breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." The Court in *Vaca* held that a union did not necessarily breach its duty of fair representation by refusing to take a member's grievance to arbitration. The Fourth Circuit has followed the guidance of the Supreme Court by clearly articulating the standard to measure union conduct:

"A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action."

*Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 469 F.2d 181, 183 (4th Cir. 1972). When the materials submitted in the present case are considered in the light most favorable to the plaintiff, he is still unable to show a breach by the union of its duty of fair representation under the standards set forth by the Supreme Court and interpreted by the Fourth Circuit.

The evidence shows that the first time that the plaintiff approached any union representative or official to protest his seniority date was in September, 1978. At that time, the plaintiff contacted the Local 992 Business Agent, Racie Sherman, and claimed that the seniority date given on the list posted that month was incorrect. Sherman did not file, or advise the plaintiff to file, a formal grievance but, after informal communications with Mitchell, arranged for the plaintiff's seniority date to be changed in accordance with the plaintiff's wishes. When the November, 1978 list was posted reflecting the new date, three other employees whose relative seniority was thereby decreased filed formal grievance. The union represented these employees before the Joint Committee which decided that the April, 1977 list had not been protested in accordance with the provisions of the collective bargaining agreement and would be regarded as correct. When the January, 1979 list was posted reflecting that Joint Committee decision, plaintiff filed a formal grievance claiming that his seniority date should be listed as March 25, 1963. The union represented plaintiff at the hearing before the Joint Committee, but the panel rejected his claim on the same grounds it had previously given in deciding in favor of the other three employees, namely that the dates listed on the April, 1977 list would be regarded as correct because they had not been protested in accordance with the terms of the collective bargaining agreement. At that point, the plaintiff decided to forego any further intra-union remedies and filed this suit.

The Court has considered all the allegations of the plaintiff relative to the actions of the union related to his seniority complaints and it is apparent that no evidence has been presented which would support a finding that the union breached its duty of fair representation as that duty was interpreted by the Fourth Circuit in *Griffin, supra*. The actions of the Local 992 Business Agent with respect to the initial informal complaint of the plaintiff in September, 1978 certainly cannot be interpreted as a breach of the duty of fair representation. There has been no evidence that the Local

992 Business Agent treated plaintiff's initial complaint with either hostility or discrimination. Nor did the union take arbitrary action in responding to plaintiff. To the contrary, the evidence demonstrates that the Business Agent cooperated in good faith with plaintiff and was successful in persuading Mitchell to make an informal accommodation of plaintiff's concerns. The Agent did not advise the plaintiff to file a formal grievance pursuant to Section 5.2(b) of the collective bargaining agreement because of his good faith belief that such a grievance would be barred by the ten day finality provision of that section. (Conference's deposition exhibit no. 9, p. 1) The rationale of the later Joint Committee decision indicates that the Agent's advice was sound under the circumstances and represented a good-faith attempt to represent a union member who was in a difficult situation because he had failed to protest the earlier list. Indeed, the plaintiff admits that as of that time, he was "happy" with his representation by the union. (Deposition of Charles Herbert Fox, October 1, 1980, p. 31).

The plaintiff's displeasure with the union actually began when the November, 1978 list was posted and the three employees decided to file formal grievances. · The plaintiff faults the union for its representation of himself and the three employees in the formal grievance proceedings before the Joint Committee in December, 1978 and January, 1979. Undoubtedly, a difficult situation arose for all involved, particularly the union, when the seniority interests of the three employees came into direct conflict with those of the plaintiff. However, the plaintiff cannot prevail in this § 301 action by showing that he disagreed with the actions of the union or even by showing that the union made a mistake in judgment which adversely affected his seniority status. *Vaca, supra* 386 U.S. at 193, 87 S.Ct. at 918, *Hines, supra* 424 U.S. at 570, 96 S.Ct. at 1059. Rather the plaintiff must show that the union breached its duty of fair representation by taking, or not taking, some action which would contravene the standards set forth in *Griffin, supra*. And

the evidence presented does not provide any support for a finding that the duty of fair representation was in any way breached.

■■■ Mere representation of the three employees asserting seniority rights contrary to those of the plaintiff would not constitute a breach of the duty of fair representation. All four employees were members of Local 992 equally entitled to union representation before the Joint Committee, a fact the plaintiff admits. (Deposition of Charles Herbert Fox, October 1, 1980, p. 34). The plaintiff asserts that he never received formal written notice regarding the hearing on the grievance of the three employees, even though his own seniority rights stood to be adversely affected. However, he admits that he knew the grievance had been filed and that it was "common knowledge" among the employees. (Deposition of Charles Herbert Fox, October 1, 1980, p. 34). The plaintiff also makes a number of complaints regarding the evidence that the Local 992 Business Agent presented, or did not present, at the two hearings before the Joint Committee. (*See, e. g.,* Plaintiff's Opposition to Motion for Summary Judgment by Local 992, November 12, 1980, pp. 3–5). Given the rationale of the Joint Committee's decisions with regard to both grievances, however, the relevance of the evidence complained about by the plaintiff is questionable, at best. For instance, the plaintiff argues that the Business Agent should have submitted plaintiff's payroll records to the Joint Committee during both hearings. However, the plaintiff admits that a seniority list was posted in April, 1977, giving his seniority date as April 15, 1963. (Deposition of Charles Herbert Fox, October 1, 1980, pp. 23–24). Thus, under the provisions of Section 5.2(b) of the collective bargaining agreement the payroll records were immaterial to the decisional process of the Joint Committee; the pertinent inquiry focused on whether the April, 1977 list was protested in accordance with the provisions of Section 5.2(b). Thus, even considering the disputed evidence in the light most favorable to the plaintiff, a disagreement between the plaintiff and the union over what evidence should have been submitted at the Joint Committee hearings does not constitute a breach of the union's duty of fair representation.

Finally, the plaintiff makes a general allegation that he was discriminated against by the union because one of the three employees filing a grievance was a relative of a "high company official" of Mitchell. However, the plaintiff has presented no evidence or specific facts to support such an accusation and admits that he can only offer an opinion on that. (Deposition of Charles Herbert Fox, October 1, 1980, p. 123–124). As the Court in *Hubicki v. ACF Industries, Inc.*, 484 F.2d 519 (3d Cir. 1973), stated in affirming summary judgment for the defendant in an action alleging breach of the duty of fair representation:

"The allegations of a complaint asserting the breach of a union's duty of fair representation must contain more than conclusory statements charging discrimination in order to be actionable . . . . Plaintiff then has done nothing more than show that he is dissatisfied with the union's actions in this case, that there is a difference of opinion between them. Plaintiff, however, offers no concrete facts from which the presence of hostile discrimination could at least be inferred. On the other hand, there are facts in plaintiff's own affidavit which indicate that there was a rationale basis for the union's refusal to process plaintiff's grievance. In view of this, and considering the discretion given unions in grievance disputes by *Vaca v. Sipes*, we conclude that summary judgment was properly granted in favor of the union." 484 F.2d at 526.

The language of the Court in *Hubicki* could almost be adopted word-for-word in the present case. The plaintiff has made broad accusations which demonstrate no more than that he is dissatisfied with the union's performance and there exists a difference of opinion between them. However, he has offered no specific facts or evidence from which it could even be inferred that the union's actions constituted a breach of the duty of fair representation. The union has offered at least a rationale basis for its actions and the areas of disagreement are within the bounds of the discretion given to

unions in grievance disputes by *Vaca, supra.* This Court realizes the frustration experienced by the plaintiff in connection with his seniority dispute, particularly in light of the increased economic pressures which have been brought to bear upon all in recent years. The Court also recognizes that reasonable men could differ over the most effective manner of representing a union member in the plaintiff's situation. However, the Supreme Court has granted unions a certain amount of discretion in handling grievances and the assertions and evidence in the present case, do not support a claim that the union abused that discretion with regard to the plaintiff's dispute. Thus, the plaintiff's action under § 301 fails because of his inability to demonstrate any breach of the duty of fair representation.

The facts and legal arguments are adequately presented in the written briefs, affidavits and deposition testimony and the decisional process would not be significantly aided by oral argument. Accordingly, this Court dispenses with oral argument and grants the motions for summary judgment.

Accordingly, it is this 3rd day of February, 1981, by the United States District Court for the District of Maryland, ORDERED:

1. That the Eastern Conference of Teamsters be, and the same is, hereby DISMISSED as a defendant to this action;

2. That the motions for summary judgment on behalf of defendants Teamsters Local Union No. 992 and Mitchell Transport, Inc. be, and the same are, hereby GRANTED; and

3. That a copy of this Memorandum Opinion and Order be sent to counsel for all parties.